# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

BILLY WAYNE RISNER,

    Plaintiff,

vs.                                     CASE NO. CV-10-J-458-NW

ROGERS GROUP, INC., et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the court is defendants' motion for partial summary judgment (doc. 16), defendants' memorandum in support of said motion (doc. 16), defendants' evidentiary submissions in support of said motion (doc. 17), plaintiff's opposition to said motion (doc. 23), plaintiff's evidentiary submissions in support of said opposition (docs. 24, 25), and defendants' reply (doc. 27). Having considered the motion and all other pleadings filed to date, the court finds as follows:

## Factual Background[1]

Plaintiff Billy Wayne Risner ("Risner") began working for defendant

---

[1] Defendants' motion for partial summary judgment refers only to plaintiff's state law claims. *See* Def.'s Brief at 1; Compl. Counts I–IV. Thus, this court refers only to those facts relevant to those claims.

Rogers Group ("Rogers Group") at its Tuscumbia location, on April 5, 1996. Risner Depo. 46, 53. Risner was continuously employed by Rogers Group from 1996 until January 23, 2009, except for a short period of time around 2003. *Id.* at 47. He worked as an oiler and fuel truck driver, responsible for fueling road paving equipment and servicing the equipment while construction crews paved roads through north Alabama. *Id.* at 54–56. Risner reported to Rickey Posey ("Posey"), *id.* at 61, who in turn reported to Kenny Adomyetz ("Adomyetz"), *id.* at 64.

On January 23, 2009, Posey and Adomyetz called Risner into a meeting to inform him that he was terminated. *Id.* at 149, 160; Posey Depo. 22.[2] At that time, Risner was on a seasonal layoff from work at Rogers Group. Risner Depo. 41–42, 149.[3] At the meeting, Posey and Adomyetz told him that Rogers Group was not going to call him back to work after the seasonal break, that his work performance was becoming unacceptable, and that several supervisors had complained that he had not been doing his job. Risner Depo. 151–52; Posey Depo. 22.[4] Risner alleges

---

[2] At the time of his termination, Risner was forty-seven years old. Risner Depo. 46.

[3] Seasonal layoffs occurred at Rogers Group yearly, and Risner had sometimes been called back to do winter maintenance before other employees had been called back to work. Risner Depo. 40–41.

[4] Risner denies that supervisors had reported he was not doing his job. Risner Depo. 151–52.

that Posey and Adomyetz made derogatory, age-related, and discriminatory remarks to him during the meeting. Risner Depo. 39–40, 76–77, 80, 164–65, 167–69, 180–82. Defendants deny that such statements were made. Posey Depo. 24–25, 39–41.

After termination, Risner alleges he was not allowed to retrieve several personal items that he had left in his fuel truck while on seasonal layoff. Risner Depo. 153.[5] These items included: a Crown Royal bag containing an estimated $40 in loose change; work clothes, including a Carhartt jacket and a pair of bibs; miscellaneous tools, including a ball-peen hammer previously belonging to Risner's grandfather; three to four country music CDs; diaries; pictures of Risner's deceased sister; and a personal address book. *Id.* at 202–12, 217. Immediately following the termination meeting, Risner called 911, contacting the Colbert County, Alabama Sheriff's Department for help recovering his personal items. *Id.* at 154–55, 215. The Sheriff's Department told Risner that if he was being asked to leave private property, he needed to leave. *Id.* at 155. After Risner left company

---

[5]Risner kept his belongings in the truck during the year and had allegedly left them in the truck during the seasonal layoff for at least thirteen years prior to this incident; he claims that Posey and Adomyetz knew of this practice and approved of him doing so. Risner Decl. 6. In his deposition, Risner stated "I left it in there every year, you know. I mean, why take it out that year?" Risner Depo. 214. Risner further testified, "I didn't – I mean I didn't need it, you know, I mean that was stuff I work with. You know, I left it in my work truck. So, you know, I've got another jacket, you know another coat. I mean, I've got more tools, you know." *Id.* at 213.

premises, Posey reportedly told Billy Nix to get Risner's personal property and belongings out of the truck and to bring them, in a box, to the front office. Posey Depo. 48–49. Although Posey and Adomyetz reportedly knew how much Risner's personal property meant to him–specifically the ball-peen hammer and sister's photos, Risner Decl. 2-4–only two items of his property have been returned to him, *id.* at 5. Further, Risner did not return certain company-issued items to Rogers Group when his employment was terminated, including keys to the fuel truck and front gate, a fuel card, and a cell phone. Risner Depo. 91–93, 215–16, 258–60; Doc. 25 Exh. 3 at 13.[6]

    Risner acknowledges that Rogers Group had an Employee Handbook and that he received a copy. Risner Depo. 111–12; Doc. 17 Exh. 2 at 5–27, 30. Moreover, he acknowledges that Rogers Group maintained policies that prohibited discrimination or harassment in the workplace, Risner Depo. 114, although he contends that Rogers Group did not carry out those policies, *id.* at 114, 235, 236. Risner states that nothing has been done to Posey and Adomyetz in the way of disciplinary action or termination regarding any of their actions in connection with this case. Risner Decl. 6–7. Risner also acknowledges that Rogers Group's

---

[6]Risner states that he said, "You're not giving my personal property so I'm keeping your personal property." Risner Depo. 154.

policies contained a reporting mechanism for employees who believed they had been subjected to discrimination or harassment. Risner Depo. 114. Risner did not follow the normal reporting chain, but he did report the alleged discrimination to the corporate office. *Id.* at 70–71, 75–85.

Plaintiff asserts, among other federal law claims, several state law claims, including: conversion and trover against Posey, Adomyetz, and Rogers Group; invasion of privacy or false light against all three defendants; and negligent or wanton hiring, training, supervision, and retention against Rogers Group. *See* Compl. Counts I–IV.

## **Standard of Review**

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## Legal Analysis

### Invasion of Privacy

The Alabama Supreme Court recognizes four distinct wrongs that comprise the tort of invasion of privacy, including: "(1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000) (quoting *Johnston v. Fuller*, 706 So.2d 700, 701 (Ala. 1997)).

Plaintiff's complaint lists his claim as "Invasion of Privacy/False Light." *See* Compl., Count III. The invasion of privacy tort of "false light" is defined as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Cottrell v. National Collegiate Athletic Ass'n*, 975 So.2d 306, 348 (Ala. 2007) (quoting *Butler v. Argo*, 871 So.2d 1, 12) (Ala. 2003) (internal quotation marks omitted). Furthermore, the information made public need not be private, but it must be false. *Id.* (citing Restatement (Second) of Torts § 652E cmt. a (1977)). Plaintiff has not provided any evidence suggesting that he has been placed in false light; moreover, no information that Risner alleges was disseminated could possibly be false. Thus, if this court construes plaintiff's invasion of privacy claim as one arguing that defendants put him in a false light, his claim fails as a matter of law.

     Furthermore, even if this court were to construe plaintiff's claim as one arguing another form of invasion of privacy, his claim fails. First, plaintiff cannot prove that defendants gave publicity to his private belongings. In order to prove publicity of private information, plaintiff must prove that "the matter publicized is of a kind that (a) would be highly offensive to the reasonable person, and (b) is not of legitimate concern to the public." *Johnson v. Fuller*, 706 So.2d 700, 703 (Ala. 1997) (citing Restatement (Second) of Torts § 652D). Furthermore, publicity is

the key element and "it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* (citing Restatement (Second) of Torts § 625D cmt. a) (emphasis omitted). Plaintiff argues that at least two people were granted access to his belongings: Billy Nix reportedly retrieved Risner's belongings from his truck, Posey Depo. 48–49, and Bill Eldridge returned one of his CDs to him, Risner Decl. 5. He has provided no further evidence that anyone at Rogers Group–or elsewhere–accessed or otherwise distributed his items.[7] Thus, this court finds that any alleged dissemination of Risner's personal information or belongings is insufficient to prove publicity of a private manner.

Furthermore, plaintiff cannot prove intrusion upon his physical solitude or seclusion. This tort is defined as the "intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Rosen v. Montgomery Surgical Ctr.*, 825 So.2d 735, 737 (Ala. 2001) (quoting *Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174, 1178 (Ala. 1995). There is no requirement that some

---

[7]Plaintiff attempts to prove further access to his personal items by making statements and asking questions in the negative. For example: "You know, who's looked at it since I left from there. There is no telling. That was my personal phone book so my privacy was invaded." Risner Depo. 217; "Can you tell me one person that's not [looked at my phone book]?" *Id.*; "I agree that I don't know anybody hasn't looked at my sister's pictures." *Id.* at 226. The court finds that this speculation, without any proof, is insufficient to create a genuine issue of material fact.

physical area be violated. *Johnston*, 706 So.2d at 702 (citing Restatement (Second) of Torts § 652B cmts. b, c); *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 711 (Ala. 1983) ("One's emotional sanctum is certainly due the same expectations of privacy as one's physical environment."). An intrusion may occur in a public place so long as the party has a reasonable expectation of privacy; moreover, no communication or publication to a third party is required. *Phillips*, 435 So.2d at 709–11. Plaintiff argues that defendants wrongfully intruded into his "emotional sanctum." Pl.'s Brief at 16. He bases his claim on his personal address and telephone book, the pictures of his deceased sister, and the ball-peen hammer that had previously belonged to his grandfather. *Id.* However, plaintiff has provided no evidence that one or more defendants has intruded upon–or allowed others to intrude upon–any of these items.[8] Furthermore, regardless of the potentially personal nature of these items, plaintiff's allegations that his privacy was intruded upon simply because his personal items have not been returned to him[9] is unpersuasive and does not change this result.

Finally, plaintiff cannot prove appropriation because his name or likeness has clearly not been used for the defendants' commercial benefit. *See Schifano v.*

---

[8] *See* note 7, *supra*.

[9] *See* Pl.'s Brief at 16–17.

*Greene County Greyhound Park, Inc.*, 624 So.2d 178, 181 (Ala. 1993) (citing Restatement (Second) of Torts § 652C (requiring a person's name or likeness be appropriated by another to the other's "use or benefit")). Thus, this court finds that plaintiff has failed to establish a genuine issue of material fact on his invasion of privacy claim.

### Negligent or Wanton Hiring, Training, Supervision, and Retention

Wantonness is defined by the Alabama legislature as "[c]onduct which is carried on with a reckless or conscious disregard of the rights . . . of others." Ala. Code § 6-11-20(b)(3) (1975). Further, wantonness is defined by the Alabama Supreme Court as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co. v. Rousch*, 723 So.2d 1250, 1256 (Ala. 1998). Although plaintiff argues that Rogers Group "has long had notice of Posey's and Adomyetz's wrongful actions" and has "condoned and ratified" such conduct, Pl.'s Brief at 17, he has offered no evidence suggesting that Rogers Group was aware of any concerns regarding Posey or Adomyetz prior to his termination and subsequent claims. He has failed to present any evidence showing that Rogers Group recklessly or consciously disregarded his rights or knew that such an injury would probably occur. *See Pritchett v. ICN*

*Medical Alliance*, 938 So.2d 933, 941 (Ala. 2006) (granting summary judgment on a wantonness claim where plaintiff had not presented any evidence indicating that others had been similarly injured or otherwise indicating that defendant was aware that such an injury would probably occur).

To recover on negligent supervision and training claims, "[a] plaintiff must establish by affirmative proof that the employer actually knew of the incompetence [of the employee], or that the employer reasonably should have known of it." *Speigner v. Shoal Creek Drummond Mine*, 2010 WL 4342242, at *3 (11th Cir. Nov. 3, 2010). Even if Risner properly alerted Rogers Group of the alleged conduct surrounding his termination, he has provided no evidence that the company had any complaints or other reason prior to his termination to be concerned about either Posey's or Adomyetz's conduct. Plaintiff has also failed to provide evidence of conduct prior to this incident which should have put the company on notice of any alleged wrongdoing by either individual defendant.[10] Furthermore, plaintiff is unable to provide such evidence to support his negligent

---

[10] Although plaintiff's negligent supervision and training claims based on alleged age discrimination fail for the reasons stated above, they also fail because plaintiff is unable to establish the commission of an Alabama tort. Alabama has enacted an Age Discrimination in Employment Act, Ala. Code § 25-1-20 *et seq.*, but Risner has not asserted his rights under the Act. *See Rabb v. Ga.-Pacific, LLC*, 2010 WL 2985575, at *16–17 (S.D. Ala. July 26, 2010) ("Because Alabama does not recognize a common-law tort for race discrimination in employment, this Court finds that plaintiff cannot maintain an action for negligent supervision.") (citing *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002).

hiring and retention claims.

Thus, this court finds that summary judgment should be granted to defendant on plaintiff's negligent or wanton hiring, training, supervision, and retention claims.

## Conclusion

Having considered the foregoing, the court finds that plaintiff has failed to establish a genuine issue of material fact on his invasion of privacy claim and his negligent or wanton hiring, training, supervision, and retention claims. The court further finds that genuine issues of material fact exist on his conversion claim. Thus, the court **ORDERS** that defendants' motion for partial summary judgment (doc. 15) be **GRANTED IN PART**, in that defendants' motion for summary judgment be granted on plaintiff's invasion of privacy and negligent or wanton hiring, training, supervision, and retention claims. Defendants' motion is **DENIED** on plaintiff's conversion claim because genuine issues of material fact exist. The court shall so rule by separate order.

**DONE** and **ORDERED** this 12th day of January 2011.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　INGE PRYTZ JOHNSON
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. DISTRICT JUDGE